E. S. REID v. CHARLOTTE NATIONAL BANK and E. J. HEATH.

(Filed 1 May, 1912.)

**Banks — Contracts — Deposits as Payment on Debt — Mortgages— Trusts and Trustees—Equity—Cancellation.**

    A customer of a bank being indebted to it under an agreement that his deposits were to be considered as a payment, the indebtedness increasing as the checks exceeded the deposits, made a trust deed as a further collateral to secure his indebtedness in the sum of $5,000 for the period of one year, without agreeing to a novation thereof after that period. At that time the bank held notes secured by collateral for the full indebtedness, which it thereafter canceled. Subsequent deposits of the customer far exceeded the amount of his indebtedness for the time named. Under the principle that "the first money paid in is the first money paid out," the $5,000 indebtedness under the deed of trust was paid, and. in equity, cancellation of the note and mortgage should be decreed.

APPEAL by plaintiff from *Lyon, J.*, at January Term, 1912, of MECKLENBURG.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Clarkson & Duls, Morrison & McLain for plaintiff.*
*Pharr & Bell, Stewart & McRae for defendants.*

CLARK, C. J.   This is an action to enjoin the foreclosure of
a deed in trust executed by the plaintiff to E. J. Heath, trustee,
to secure loans and advances to be made by the Charlotte Na-
tional Bank to the Heath-Reid Jobbing and Commission Com-
pany during twelve months from 8 June, 1901, to an amount not
exceeding $5,000.   The exact language of the mortgage is:
"The said Reid has agreed that if the said Heath-Reid Jobbing
and Commission Company shall fail to pay the said bank
within twelve months from this date all amounts for which it is
in any manner liable, then the said Reid will pay the balance
that may remain due at the end of the twelve months afore-
said, not exceeding the sum of $5,000, however," with the fur-
ther provision that if the Commission Company failed to pay
said bank the balance due, and if said Reid failed to pay: said
$5,000, then it should be the duty of said Heath, trustee, to
advertise and sell.   The final clause of the mortgage is:   "It
being the intention of the said Reid to secure the ultimate pay-
ment to said bank of the sum of $5,000, or so much thereof as
may remain unpaid at the end of twelve months."   At the end
of twelve months the total indebtedness of the Commission Com-
pany to the bank was $27,000, but the bank had ample col-
lateral of the company to protect such indebtedness.   After 8
June, 1902, the Commission Company continued to do business
with the bank two years longer, depositing and taking out
money to the amount of several millions of dollars.   On 8
June, 1902, there was an outstanding note of $30,000 which
had then been executed to the bank by the Commission Com-
pany and a credit of $3,000 cash on deposit with the bank.
The cashier of the bank testified that on 5 January, 1904, the
said $30,000 note, together with two other later notes, were
marked paid and canceled and delivered up to the Commis-
sion Company.   Three new notes aggregating $75,000 were
executed and $40,000, being two of these notes, were after-
wards paid.

The bank kept a running account with the commission house,
all deposits being treated as payments and the indebtedness

being reduced as deposits were made and increased as the checks exceeded the deposits. There was no application of any deposits as payments to any specified part of the indebtedness by either party.

No note was given by the plaintiff for the $5,000 mentioned in the mortgage, but the mortgage was merely to secure any balance that might be due on 8 June, 1902, not to exceed $5,000.

There was no extension or renewal asked or assented to by the plaintiff. In *Boyden v. Bank,* 65 N. C., 13, it is said: "The ordinary relation subsisting at common law between a bank and its customers on a general deposit account is simply that of debtor and creditor. A deposit by a customer, in the absence of any special agreement to the contrary, creates a debt, and the payment by the bank of the customer's checks discharges such debt *pro tanto*. The bank or customer may at any time discontinue their dealings, and the balance of the account between them can be easily ascertained by a simple calculation. The general rule in adjusting a running account between a bank and its customer is, 'The first money paid in is the first money paid out.'" This case has been often cited and followed since. See Anno. Ed.

At the end of the twelve months, on 8 June, 1902, when this $5,000 liability on the part of the plaintiff, by its terms, became due, the Commission Company was indebted to the bank far more than the $5,000 and the bank held the note of the Commission Company for $30,000. This $30,000 note was canceled and surrendered in January, 1904. This is evidence that the said $5,000 had been paid, which is further shown by the fact that during the two years succeeding 8 June, 1902, the dealings between the Commission Company and the bank amounted to millions. It follows that very soon after 8 June, 1902, the deposits paid in (which in the absence of any agreement to the contrary were applied by the law to the oldest indebtedness) paid off the $5,000 for which the plaintiff was responsible on 8 June, 1902, and there being no agreement on his part to a renewal, the amount for which the plaintiff was liable was paid off. The indebtedness which the Commission Company

now owes the bank cannot possibly include the $5,000 which was discharged by the deposits first made after 8 June, 1902, whenever such deposits amounted to $27,000. It is in evidence without contradiction that the deposits amounted to several millions. The cancellation of the $30,000 note January, 1904, without any agreement or evidence tending to show a novation on the part of the plaintiff, is conclusive that said indebtedness of $5,000 was paid when the note was canceled. The mortgage on the part of the plaintiff was not a continuing guarantee, but by its terms was to secure not to exceed $5,000, if so much should be due "at the end of twelve months," *i. e.,* on 8 June, 1902.

On the principle of "the first money paid in is the first money paid out," said indebtedness must have been paid even long before the $30,000 note was canceled. The injunction should have been made perpetual, or rather upon the uncontradicted testimony it should have been adjudged that the liability of the plaintiff had been discharged and the mortgage should have been ordered to be canceled and surrendered to plaintiff.

Error.